UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:16-cv-288-FDW

| | |
|---|---|
| GERALD WHITESIDE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **ORDER** |
| ) | |
| SUSAN WHITE, ) | |
| WILLIAM REED, ) | |
| ) | |
| Defendants. ) | |

**THIS MATTER** comes before the Court on a Motion for Summary Judgment by Defendant William Reed. (Doc. No. 28).

I. **BACKGROUND**

A. Procedural Background

On August 26, 2016, Plaintiff Gerald Whiteside, an inmate in the custody of the North Carolina Department of Public Safety ("NCDPS"), filed this action, pursuant to 42 U.S.C. § 1983, naming as Defendants movant Defendant Reed and Susan White, both NCDPS employees. Specifically, Plaintiff alleged that Defendant Reed used excessive force against him on September 3, 2013, while Plaintiff was incarcerated at Mountain View Correctional Institution in Spruce Pine, North Carolina. Plaintiff further alleges that, as a result, he suffered pain and injury to his ankle, and he seeks a declaratory judgment as well as compensatory and punitive damages. By order dated October 21, 2016, the Court dismissed Susan White as a defendant, allowed Plaintiff to pursue his action against Defendant Reed, and denied Plaintiff's Motion to

1

Appoint Counsel. (Doc. No. 8).

A summons was issued and served on Defendant Reed. (Doc. Nos. 10, 11). By Order entered on January 30, 2017, Defendant Reed was allowed up to and including February 27, 2017, to file a responsive pleading to the Complaint. (Doc. No. 14). Defendant Reed timely filed his Answer on February 24, 2017. (Doc. No. 15). By Order entered on July 17, 2017, the parties were allowed up to and including August 11, 2017, to file dispositive motions. (Doc. No. 26). On August 10, 2017, Defendant Reed filed the pending summary judgment motion. (Doc. No. 28). On August 14, 2017, this Court entered an order in accordance with Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Plaintiff of the requirements for filing a response to the motion for summary judgment and of the manner in which evidence could be submitted to the Court. (Doc. No. 30). Plaintiff responded to the summary judgment motion on September 1, 2017. (Doc. No. 34). Defendant filed a Reply on September 13, 2017. (Doc. No. 35). Plaintiff filed an additional response on September 25, 2017. (Doc. No. 36). Thus, this matter is ripe for disposition.

    B.    Factual Background

    1.    The Alleged Excessive Force Incident and the Summary Judgment Evidence

    a.    Plaintiff's Allegations

In his Complaint and his summary judgment materials, Plaintiff alleges that at around 8:40 p.m. on September 3, 2013, he was involved in a physical altercation (the "incident") with another inmate, Marco Culbreath, at Mountain View Correctional Institution. Three correctional officers sprayed him with pepper spray, which resulted in him being "pinned by the spray to the railing beneath the stairs." Inmate Culbreath was pulled away to the right. Plaintiff alleges that while he was on his knees, Defendant Reed used excessive force by applying a choke hold

(mandibular angle), pulling Plaintiff to the left and slamming him face first to the ground, using enough force to break both bones in Plaintiff's left ankle. Plaintiff alleges that the pain was severe. Plaintiff requested that he be cuffed in the front to stop the pain and to keep from getting sick. Plaintiff alleges that this infliction of pain was totally unnecessary and unjust due to the fact that Plaintiff was already subdued and on his knees. Plaintiff further alleges that, as a result of this incident, a plate and screws were applied to his ankle and he suffers limited mobility, swelling, numbness, and pain in his ankle.

      b.      <u>Defendant's Summary Judgment Materials</u>

Defendant's summary judgment materials show that at around 8:40 p.m. on September 3, 2013, Plaintiff was involved in a fight with Inmate Culbreath on F-Wing. (Doc. No. 1; Doc. No. 29-4 at ¶ 4: Aff. of Defendant Reed; Doc. No. 29-9 at ¶ 3: Aff. of Timothy Blevins). Both Defendant Reed and Correctional Officer Timothy Blevins responded to the incident. (Doc. No. 29-4 at ¶ 4; Doc. No. 29-9 at ¶ 3). Blevins ordered a lockdown on F-wing—a standard procedure to have all inmates return to their cells while the correctional staff address a fight or similar type of disturbance. (Doc. No. 29-9 at ¶ 3). Defendant Reed and CO Blevins ordered the two inmates to stop fighting and the inmates refused. (Doc. No. 29-4 at 4; Doc. No. 29-9 at ¶ 3). Pepper spray was used on the inmates, but they continued to fight. (<u>Id.</u>). Both Defendant Reed and Blevins agree that Plaintiff was on top of Inmate Culbreath. (<u>Id.</u>). According to Plaintiff, Inmate Culbreath pulled away to the right and he (Plaintiff) was pulled to the left. (Doc. No. 1). Blevins states that he was attempting to pull Plaintiff off of Inmate Culbreath while Defendant Reed applied a mandibular angle control technique on Plaintiff in an attempt to gain control of him. (Doc. No. 29-9 at ¶ 3). The mandibular angle is an authorized restraint taught to correctional officers to control combative inmates. (Doc. No. 29-4 at ¶ 4). The inmates finally

complied with the correctional officers' orders. (Doc. No. 29-4 at ¶ 4; Doc. No. 29-9 at ¶ 3). Plaintiff stated he thought his leg was broken. (Id.). He was handcuffed in front and medical assistance was called. (Id.). Plaintiff was then placed in a wheelchair and taken to the prison medical unit for evaluation. (Id.). Medical records show that Plaintiff suffered a left ankle fracture, which required surgery to repair. (Doc. No. 34-1 at 11).

Captain Audie Peterson was appointed to investigate the incident. (Doc. No. 29-6 at ¶ 3: Aff. of Audie Peterson). Per NCDPS policy, investigations are required any time there is an injury to an inmate or force is used to restrain an inmate. (Id.). Captain Peterson interviewed the witnesses to the incident, including Plaintiff, Inmate Culbreath, CO Blevins and Defendant Reed, and written statements were obtained from each. (Doc. No. 29-6 at ¶ 4). He also reviewed a video tape of the incident, but determined that the video does not clearly show the fight or the actions the correctional officers took to break up the fight.[1] (Id. at ¶ 6 & Attachment B). In the written statement Captain Peterson received from Plaintiff on September 4, 2013, Plaintiff stated, "We argued and we fought. Leg was broke went to hospital. Disagreement went too far." (Doc. No. 29-6 at ¶ 6 & Attachment A, p. 21). Captain Peterson completed his investigation on September 23, 2013, concluding that the correctional officers acted quickly and used the proper amount of force to obtain the correctional objective. (Doc. No. 29-6 at ¶ 4). Captain Peterson's written report was reviewed by the superintendent of Mountain View on October 4, 3013, and approved by the NCDPS Regional Director on December 18, 2013. (Id.).

---

[1] The Court has reviewed the videotape and agrees that the video does not clearly show the fight or the actions the correctional officers took to break up the fight. The videotape does show correctional officers responding to the scene of the fight, the wing being cleared of inmates, Inmate Culbreath being escorted from the scene, and Plaintiff being escorted from the scene in a wheelchair.

Defendant Reed states that he does not know how Plaintiff injured his leg, that he did not strike or slam Plaintiff, and that he did not otherwise use excessive force to control Plaintiff. (Doc. No. 29-4 at ¶ 5). Blevins states that Defendant Reed used only that amount of force reasonably necessary to break up the fight and secure the combative inmates. (Doc. No. 29-9 at ¶ 4). Captain Peterson testifies that no one he interviewed in his investigation indicated that Defendant Reed used excessive force in the incident. (Doc. No. 29-6 at ¶ 8).

## II. STANDARD OF REVIEW

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).

The party seeking summary judgment has the initial burden of demonstrating that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. Id. at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. Id. Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. Anderson, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. Dash v. Mayweather, 731 F.3d 303, 311 (4th

5

Cir. 2013). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. Further, Rule 56 provides, in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

FED. R. CIV. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, the non-movant must show the existence of a factual dispute on every essential element of his claim.

### III. DISCUSSION

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475

6

U.S. at 320-21. Furthermore, although the lack of serious injury may be considered a factor in the excessive force analysis, the fact that the prisoner suffered only minor injuries is not dispositive in an excessive force claim. See Wilkins v. Gaddy, 559 U.S. 34, 38 (2010).

For the following reasons, Defendant Reed is entitled to summary judgment as to Plaintiff's claim against him for excessive force. First, to the extent that Plaintiff has sued Defendant Reed in his official capacity, the suit is against the NCDPS and the State of North Carolina. However, neither the State nor it agencies constitute "persons" subject to suit under Section 1983. Will v. Mich. Dep't of State Police, 491 U.S. 58 (1989). Furthermore, the Eleventh Amendment bars Plaintiff's suit for monetary damages against the State of North Carolina and its various agencies. See Ballenger v. Owens, 352 F.3d 842, 844-45 (4th Cir. 2003).

Next, to the extent that Plaintiff has sued Defendant in his individual capacity, the Court finds that Plaintiff has not raised a genuine dispute of fact as to whether Defendant used excessive force against Plaintiff. Plaintiff freely acknowledges that he was fighting with another inmate when Defendant Reed arrived at the scene of the incident. Both Defendant Reed and Blevins stated that they ordered Plaintiff and the other inmate to stop fight before applying pepper spray. Plaintiff acknowledges that pepper spray was used before the correctional officers attempted to separate the inmates. Both Defendant Reed and Blevins state that after they used pepper spray, they again ordered the inmates to stop fighting and that the inmates refused their orders. It is uncontroverted that Defendant Reed placed Plaintiff in a mandibular angle control hold. Defendant Reed, Blevins, and Captain Peterson all confirm that this control hold is taught to correctional officers as a means to secure combative inmates. Plaintiff alleges that, after being placed in the mandibular angle, Defendant Reed "slam[med] [Plaintiff] face first to the ground

7

using enough force to break both bones in [Plaintiff's] left ankle." This statement is contradicted by Defendant's evidence as well as by Plaintiff's own pleadings, as he never alleges that this slamming to the ground face-first in any way injured his face or head, only his ankle. When asked by Captain Peterson after this incident to write a statement as to what had occurred, Plaintiff never mentioned Defendant Reed slamming him to the ground or any other actions by Defendant Reed that could reasonably be interpreted as excessive force.

The Court notes that, in his response to the summary judgment, Plaintiff makes various assertions in an attempt to raise a genuine factual dispute. First, Plaintiff states that "the video of the incident shows no medical staff entering or leaving the cell block at any time." (Doc. No. 34 at p. 2). Plaintiff's allegations in his Complaint all concern whether Defendant Reed used excessive force in restraining him. It is uncontested that Plaintiff was taken from the incident in a wheelchair to the medical unit, was seen at the medical unit by staff medical personnel, and subsequently was transported to an emergency room for treatment. Plaintiff's assertion that the video does not show medical staff leaving or entering the cell block, even if true, does not raise a genuine factual dispute on summary judgment as to Plaintiff's claim against Defendant Reed for excessive force.

Next, Plaintiff asserts that Defendant Reed has falsely portrayed the incident between Plaintiff and the other inmate "as a viscious [sic] assault by the Plaintiff." (Doc. No. 34 at p. 3). Plaintiff states that the incident between himself and the other inmate was merely "a mutual physical altercation. A fight rather than a [sic] assault." (Id.). Again, even if Plaintiff's version of the incident is correct, it does not raise a genuine factual dispute as to his claim against Reed for excessive force. By his own admission, Plaintiff was involved in a fight with another inmate. Clearly, this violated penal rules and created a security threat, and correctional officers were

8

required to react quickly to break up the fight.

Next, Plaintiff makes statements that are wholly unsupported by the record. He first states that Defendant Reed maintains that "[t]he Plaintiff stood over Inmate Culbreath and continued to strike him" and that "[r]elying on Defendant Reed's own narrative, the Plaintiff went from standing over the other inmate—to a mandibular hold—to handcuffs." Plaintiff argues that if he were standing when Defendant Reed applied the mandibular angle restraint hold, his injury must have occurred after the hold was applied, as Plaintiff would have been unable to stand on an injured leg. (Doc. No. 34 at 4-5). Plaintiff does not cite the source of these purported statements by Reed. At no time in his statements concerning this matter, either to the use of force investigation officer or in his affidavit filed with his summary judgment motion, does Defendant Reed state that Plaintiff was standing when the hold was applied. Rather, as Plaintiff states in his Response, Defendant Reed has testified that "Inmate Whiteside was on top of Inmate Culbreath." (Doc. No. 34 at p. 4). No one, including Plaintiff in his Complaint or Response, states that Plaintiff was standing when the mandibular angle restraint hold was applied.

Plaintiff also maintains that because Defendant Reed was a use-of-force instructor for NCDPS, he should be held to a higher standard when applying the mandibular angle. (Doc. No. 34 at p. 6). It is true that Defendant Reed has given instruction on how to apply the mandibular angle restraint hold, that this hold is authorized by NCDPS to restrain combative inmates, and that there has been no allegation that Defendant Reed applied the hold incorrectly. Plaintiff's assertion simply does not raise a genuine issue of disputed fact.

Plaintiff also maintains that he was compliant after Defendant Reed applied the mandibular angle restraint hold. Again, this is true. Before Defendant Reed applied the hold,

however, Plaintiff was engaged in a fight with another inmate; Plaintiff refused several orders to stop fighting; and, even after being sprayed with pepper spray, Plaintiff continued to fight and he had to be dragged off of the other inmate. It was not until the hold was applied that Plaintiff finally complied. Finally, as to the additional arguments made in Plaintiff's second response to the summary judgment motion, Plaintiff likewise raises no genuine issues of disputed facts sufficient to overcome the summary judgment motion.[2]

In sum, based on the facts as set forth in this motion, a reasonable jury could not find in favor of Plaintiff and Defendant Reed is entitled to summary judgment. Thus, Defendant Reed is entitled to summary judgment as to Plaintiff's excessive force claim against him.[3]

### IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant Reed's Motion for Summary Judgment, (Doc. No. 28), is **GRANTED**.

2. This action is dismissed with prejudice.

3. The Clerk is directed to terminate this action.

Signed: February 14, 2018

Frank D. Whitney
Chief United States District Judge

---

[2] The Court notes that Plaintiff has not submitted a sworn affidavit or other admissible evidence in opposing the summary judgment motion; his two responses merely present the various arguments that Court has discussed here.

[3] Defendant also raised qualified immunity as a defense to Plaintiff's excessive force claim. Because the Court has determined that there was no constitutional violation in the first instance, the Court does not need to determine whether Defendant is entitled to qualified immunity.